# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | |
|---|---|
| **MARTHA ELIZABETH SMITH,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No. 3:22-cv-00743** |
| ) | **Judge Aleta A. Trauger** |
| **CRH MEDICAL CORPORATION and** ) | |
| **CRH ANESTHESIA MANAGEMENT,** ) | |
| **LLC,** ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM

Plaintiff Martha Elizabeth Smith brings this action against defendants CRH Medical Corporation ("CRH Medical") and CRH Anesthesia Management, LLC ("CHR Management") (collectively "CRH" or "defendants"), asserting claims under the Age Discrimination in Employment Act ("ADEA"), 29 USC § 621 *et seq.*, and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, for discrimination based on gender and age, hostile work environment based on gender and age, and retaliation and retaliatory harassment under both the ADEA and Title VII. After the defendants filed a motion seeking partial dismissal of the claims as pleaded in the original Complaint (Doc. No. 1), the plaintiff filed a First Amended Complaint ("FAC") (Doc. No. 20) in an effort to cure the pleading deficiencies identified by the defendants.

Now before the court is the defendants' Motion for Partial Dismissal (Doc. No. 24), addressed to the FAC, asking the court to dismiss the plaintiff's hostile work environment claims as inadequately pleaded and to dismiss as untimely any discrimination and retaliation claims based on discrete events that occurred more than 300 days before the plaintiff filed charges with the U.S.

Equal Employment Commission. The plaintiff opposes the motion (Doc. No. 29), and the defendants have filed a Reply in further support of their motion (Doc. No. 30).

As set forth herein, the motion will be granted in part and denied in part.

## I.  FACTS AND PROCEDURAL BACKGROUND

According to the allegations in the FAC, the defendants hired Smith as Vice President, Operations, on December 1, 2016. (FAC ¶ 21.) In that role, she reported directly to CRH's President, James Kreger. (*Id.* ¶ 23.) When she was recruited, the plaintiff was living in Nashville, Tennessee, but the defendants required her to move to Atlanta, Georgia to perform her job. (*Id.* ¶¶ 24–25.) She moved to Atlanta in January 2017. (*Id.* ¶ 26.) In November 2017, the plaintiff requested permission to relocate to Nashville and to work remotely from there; her request was denied. (*Id.* ¶¶ 28–29.) She alleges that male and younger senior-management employees were permitted to work remotely. (*Id.* ¶ 30–31, 34.) Smith objected to the defendants' senior-level management that male employees and employees under age 40 were permitted to work remotely and that she was being treated differently based on her age.[1] (*Id.* ¶¶ 32, 35.)

In February 2018, CRH hired Beemal Shah, a 36-year-old man, as Senior Vice President, Operations. (*Id.* ¶ 37.) Smith was not given the opportunity to apply for this job. (*Id.* ¶ 38.) Also in February 2018, Shah informed Smith that her job title and role were changing to Vice President, Integration and Clinical Quality. (*Id.* ¶ 40.) The change in title and role amounted to a demotion, because it was accompanied by a significant reduction in authority and the loss of all direct reports, and the plaintiff began reporting to Shah rather than directly to Kreger. (*Id.* ¶¶ 41–43.)

---

[1] The plaintiff does not allege her age or even suggest her approximate age in the FAC, other than to suggest that she is over 40. Her Charge of Discrimination, however, which was filed by the defendants in support of their Motion for Partial Dismissal, states that her birth year is 1964 (Doc. No. 25-1, at 1), making her approximately 52 when she was first hired by CHR.

Throughout her employment, Kreger made unwelcome "off-color" comments to Smith about her age and gender and verbally abused her. (*Id.* ¶ 45.) As specific examples, Smith alleges that Kreger made comments about her "look[ing] good for her age," stating that his long-term goals included being company CEO and to have a "big office with young women surrounding [him]," and asking Smith when she planned to retire. (*Id.* ¶ 46.) Smith told Kreger on multiple occasions that she did not appreciate his ageist comments.

After her demotion, Kreger and Shah "treated her differently and regularly belittled her," for instance by excluding her from senior-management meetings related to upcoming acquisitions and excluding her from dinners with the senior-management team, despite referring to her as a member of that team. (*Id.* ¶¶ 47, 48.) In addition, Shah appeared at only five weekly meetings scheduled with the plaintiff from August 2019 to March 2020 and similarly failed to attend quality-control committee meetings chaired by Smith. (*Id.* ¶ 50.) The plaintiff asserts that her demotion and Kreger's and Shah's treatment of her were based on her age, her gender, and/or her having engaged in protected activity. (*Id.* ¶¶ 51–53.)

In June 2018, Smith again requested to relocate to Nashville and perform her job duties remotely. This request was denied based on pretextual reasons. (*Id.* ¶¶ 54–55.) The plaintiff asserts that the denial of her request to relocate was based on her gender and her age and that younger and male senior-management employees were permitted to work remotely. The plaintiff objected to CRH senior management that she was being treated differently than male and younger employees based on her gender and age. (*Id.* ¶¶ 56–61.) The plaintiff also alleges that the denial of her request to relocate was based on her protected activities. (*Id.* ¶ 62.)

In March 2019, the plaintiff submitted a third request to relocate to Nashville. This time, CRH granted her request. Smith moved back to middle Tennessee and began working for the

defendants remotely in June 2019. (*Id.* ¶¶ 63–64.)[2]

In March 2020, the plaintiff was informed that her position was being eliminated and her employment was being terminated. Kreger told her that she could now retire. (*Id.* ¶¶ 75–76.) No other CRH employees were terminated around the same time, and Smith's job duties were distributed among various Directors of Operations, all under age 40, whom Smith had trained. (*Id.* ¶¶ 77–78.) Smith claims that she was terminated because of her gender, age, and/or for engaging in protected activity. (*Id.* ¶¶ 79–86.)

At various points during her employment, Smith received stock grants as part of her compensation. In 2016, upon her employment, she received 40,000 stock units, and 5,000 additional units in 2018 and 2019, for a total of 50,000 units. She asserts that male and younger employees received more shares of stock when they were hired and as bonuses in 2018 and 2019, and that she received fewer shares after she engaged in protected activities because of having engaged in those protected activities. (*Id.* ¶¶ 87–97.)

Based on these allegations, the plaintiff purports to state three "counts" or claims for relief in the FAC, which she labels as follows: "Gender Discrimination and Hostile Work Environment against Defendants under Title VII" (Count I); "Age Discrimination and Hostile Work Environment against Defendants under the ADEA" (Count II); and "Retaliation and Retaliatory Harassment against Defendants under the ADEA and Title VII" (Count III). (*Id.* at 12, 13, 14.) Although the plaintiff effectively conflates her discrimination and hostile work environment claims, the court broadly construes the FAC as asserting distinct claims for (1) gender

---

[2] The plaintiff alleges in her EEOC charge that her salary was reduced by $29,000 when she relocated to Nashville and that no other members of senior management who worked remotely suffered such salary reductions from working remotely. (Doc. No. 25-1, at 1.) She has not reiterated that allegation in the FAC.

discrimination in violation of Title VII; (2) hostile work environment based on gender, in violation of Title VII; (3) age discrimination in violation of the ADEA; (4) hostile work environment based on age, in violation of the ADEA; (5) retaliation in violation of both the ADEA and Title VII; and (6) retaliatory harassment in violation of the ADEA and Title VII.

The plaintiff filed her Charge of Discrimination with the Tennessee Human Rights Commission on May 21, 2020, shortly after her termination. (*See* Doc. No. 20 ¶ 5 (referencing the "timely fil[ing of] a Charge of Discrimination"); Doc. No. 25-1.) The EEOC issued her right to sue notice on July 15, 2022. (Doc. No. 1-1.) The plaintiff filed her initial Complaint in this court on September 23, 2022. (Doc. No. 1.)

The defendants now seek partial dismissal of the plaintiff's claims. They assert that the allegations fail to establish a hostile work environment or harassment claim under either of the statutory schemes at issue and that, to the extent that the plaintiff's discrimination claims are premised upon discrete actions that took place more than 300 days before she filed her Charge of Discrimination (or prior to July 26, 2019), they are time-barred.

## II.    LEGAL STANDARD

In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court will "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). The Federal Rules of Civil Procedure require only that a plaintiff provide "a short and plain statement of the claim that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). The court must determine only whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can

ultimately prove the facts alleged. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

At the same time, however, the complaint's allegations "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 556; *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). To establish the "facial plausibility" required to "unlock the doors of discovery," the plaintiff cannot rely on "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action," but, instead, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678–79. According to the Supreme Court, "plausibility" occupies that wide space between "possibility" and "probability." *Id.* at 678. If a reasonable court can draw the necessary inference from the factual material stated in the complaint, the plausibility standard has been satisfied.

In ruling on a Rule 12(b)(6) motion, a court generally only considers the plaintiff's complaint. If, however, "a plaintiff references or quotes certain documents, a defendant may attach those documents to its motion to dismiss, and a court can then consider them in resolving the Rule 12(b)(6) motion without converting the motion to dismiss into a Rule 56 motion for summary judgment." *Watermark Senior Living Ret. Cmties., Inc. v. Morrison Mgmt. Specialists, Inc.*, 905 F.3d 421, 425 (6th Cir. 2018) (quoting *In re Omnicare, Inc. Sec. Litig.*, 769 F.3d 455, 466 (6th Cir. 2014)).

Because the statute of limitations is an affirmative defense, and a plaintiff is not obligated to plead around an affirmative defense to state a claim, motions to dismiss are typically an "inappropriate vehicle for dismissing a claim based upon a statute of limitations." *Engleson v.*

*Unum Life Ins. Co. of Am.*, 723 F.3d 611, 616 (6th Cir. 2013). However, when "the allegations in the complaint affirmatively show that the claim is time-barred," dismissal under Rule 12(b)(6) is appropriate. *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012)

## III.    DISCUSSION

### A.    Discrimination and Retaliation Claims under Title VII and the ADEA

Under both Title VII and the ADEA, a plaintiff must file a discrimination complaint within 300 days of an alleged unlawful employment practice covered by the statute. 42 U.S.C. § 2000e–5(e)(1); 29 U.S.C. § 626(c)(1). A claim will be "time barred if it is not filed within these limits." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002).[3]

The Supreme Court has made it clear that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Id.* at 113. That is, "[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act. The charge, therefore, must be filed within the . . . 300-day time period after the discrete discriminatory act occurred" to be timely. *Id.*

In this case, the plaintiff alleges a number of discrete discriminatory and/or retaliatory acts that took place outside the limitations period—and only one that took place within it. Her termination in March 2020, just two months before she filed the EEOC charge, is clearly not time-barred, nor do the defendants seek dismissal under Rule 12(b)(6) of the discrimination or retaliation claims premised upon that action.

---

[3] "In a State that has an entity with the authority to grant or seek relief with respect to the alleged unlawful practice, an employee who initially files a grievance with that agency must file the charge with the EEOC within 300 days of the employment practice; in all other States, the charge must be filed within 180 days." *Morgan*, 536 U.S. at 109 (citing 42 U.S.C. § 2000e-5(e)(1)). Tennessee is a "deferral" state in which the 300-day limitations period applies. *See Howlett v. Holiday Inns, Inc.*, 49 F.3d 189, 197 (6th Cir. 1995).

Otherwise, however, insofar as the plaintiff seeks to state a claim based on the denial of permission to relocate in November 2017 and 2018, the denial of the opportunity for a promotion and then being demoted in February 2018, and receiving smaller grants of stock compensation than younger and male employees, her discrimination and retaliation claims based on these discreet events are clearly time-barred, as they all occurred more than 300 days before she filed the EEOC charge. The Motion for Partial Dismissal will be granted as to any discrimination and retaliation claims based on discrete events that took place before July 26, 2019.

### B. Hostile Work Environment Claims

A hostile work environment claim under either the ADEA or Title VII requires proof that a workplace is "permeated with "discriminatory intimidation, ridicule, and insult . . . that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal quotation marks and citations omitted) (Title VII); *see also Crawford v. Medina Gen. Hosp.*, 96 F.3d 830, 834–35 (6th Cir. 1996) (applying same standard to ADEA hostile work environment claim). "Both an objective and a subjective test must be met: the conduct must be severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive and the victim must subjectively regard that environment as abusive." *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 463 (6th Cir. 2000) (citing *Harris*, 510 U.S. at 21–22).

As the Supreme Court has explained:

> Hostile environment claims are different in kind from discrete acts. Their very nature involves repeated conduct. . . . The "unlawful employment practice" therefore cannot be said to occur on any particular day. It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own. . . . Such claims are based on the cumulative effect of individual acts.
>
> . . . .

In determining whether an actionable hostile work environment claim exists, we look to all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. To assess whether a court may, for the purposes of determining liability, review all such conduct, including those acts that occur outside the filing period, we again look to the statute. It provides that a charge must be filed within 180 or 300 days after the alleged unlawful employment practice occurred. A hostile work environment claim is composed of a series of separate acts that collectively constitute one "unlawful employment practice." 42 U.S.C. § 2000e–5(e)(1). The timely filing provision only requires that a Title VII plaintiff file a charge within a certain number of days after the unlawful practice happened. It does not matter, for purposes of the statute, that some of the component acts of the hostile work environment fall outside the statutory time period. Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability.

*Morgan*, 536 U.S. at Id. at 115–17 (most internal quotation marks and citations omitted).

This means, for statute of limitation purposes, that, "because the entire hostile work environment encompasses a single unlawful employment practice," and "[t]he statute does not separate individual acts that are part of the hostile environment claim from the whole for the purposes of timely filing and liability," "the employer may be liable for all acts that are part of this single claim. In order for the charge to be timely, the employee need only file a charge within 180 or 300 days of *any act that is part of the hostile work environment*." *Id.* at 117–18 (internal quotation marks and citations omitted; emphasis added).

The plaintiff alleges that, "[t]hroughout her employment," Kreger made "off-color comments about her age," "verbally abused her," made sexist and ageist comments in her presence, and asked her when she planned to retire. (Doc. No. 20 ¶¶ 45–46.) In addition, following her demotion in February 2018, Shah and Kreger allegedly "treated her differently and regularly belittled her at work" and excluded her from senior management meetings and dinners, and Shah regularly refused to attend weekly meetings with her and committee meetings she chaired, including in late 2019 and 2020. (*Id.* ¶¶ 47–50.) In addition to these ongoing issues that, together,

would not qualify as discrete, discriminatory acts, the plaintiff also alleges that she was treated differently from younger and/or male employees when she was denied permission to relocate and to work remotely, denied the opportunity for a promotion, and demoted. The plaintiff states that all of this conduct was "unwelcome."

The plaintiff's wholly conclusory assertions that the unwelcome conduct was based on her gender and/or age and was "severe or pervasive enough that a reasonable person would consider CRH a hostile or abusive work environment" (*id.* ¶¶ 51–52) are not the type of "facts" to which the court is required to give much credence. In addition, the law is clear that a few offensive utterances, even if they reference protected characteristics, will not be enough to create an objectively hostile working environment. *See, e.g.*, *Crawford*, 96 F.3d at 836 ("[I]t seems obvious that the ADEA was not intended to remedy minor social slights and the resulting hurt feelings."). Nonetheless, the court finds that the plaintiff's allegations, construed as true and viewed collectively in the light most favorable to the plaintiff, are *just barely* sufficient to nudge the claims over the line between mere possibility and plausibility, under *Iqbal* and *Twombly*. Broadly construed, the allegations give rise to a reasonable inference that the conduct at issue was "severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive and [that the plaintiff] subjectively regard[ed] that environment as abusive," *Bowman*, 220 F.3d at 463, for purposes of stating a hostile work environment claim based on age and/or gender. Because at least some of the alleged conduct took place within the limitations period, the plaintiff's hostile work environment claims are not facially time-barred.

## C. Retaliatory Harassment Claim

The court further observes that the defendants do not address the plaintiff's allegations that she suffered retaliatory harassment. "Retaliation claims, brought under a hostile workplace theory, are statutorily distinct from hostile work environment claims." *Davis v. Metro Parks & Recreation*

*Dep't*, 854 F. App'x 707, 717 (6th Cir. 2021). Rather than being required to show that the conduct was sufficiently severe or pervasive to create an environment that a reasonable person would find hostile or abusive, the plaintiff is required only to show that the conduct at issue "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* at 718 (quoting B*urlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). The defendants make no effort to dispute that at least some of the conduct the plaintiff claims was in retaliation for engaging in conduct protected by the ADEA and Title VII occurred during the limitations period.

## IV.     CONCLUSION

For the reasons set forth herein, the court will grant in part and deny in part the defendants' Motion for Partial Dismissal (Doc. No. 24). Any discrimination and retaliation claims based on discrete events that took place before July 26, 2019 will be dismissed as time-barred. In all other respects, the defendants' motion will be denied.

An appropriate Order is filed herewith.

ALETA A. TRAUGER
United States District Judge